Good morning. We'll first hear cases U.S. v. Peppers and U.S. v. Mayo, numbers 17-1029 and 16-4282. I think I have deja vu, right? It seems like we did this a few weeks ago. I think we did. Good morning. Good morning. May I have your support? My name is Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania, and I represent the appellants Anthony Mayo and Ronnie Peppers. I'd like to reserve two minutes of my time for rebuttal. That's granted. Addressing at the outset the government's jurisdictional or gatekeeping argument, our position is this court defined the standard that the district court should use in evaluating a successive motion in Goldblum, and that standard is simply whether the motion conclusively demonstrates that it does not meet Section 2244B-4's requirements. I think we can move on because I think we've got to adopt some sort of a test. Now we've got some experience from our sister circuits, the 9th, the 4th, the 10th, the 11th. I think we need to talk about sort of where we are going to fall in this group, and maybe you could just address that. Well, I think we should fall where the 9th, 4th, and at least one panel of the 11th Circuit has indicated, and that is if you have an Armed Career Criminal Act sentence, and you have a silent record like most of these cases are, and you come into the district court on a successive filing, if your sentence may have been based upon the residual clause, you've passed the gate. Now that doesn't relieve the defendant of any burden. It simply allows the court to narrow the range of cases in which a successive motion is appropriate, and that's all this standard does is simply incorporate what used to be the abuse of writ process. Just the possibility of falling under the residual clause, isn't it? I believe it is. That's the standard, a possibility. A possibility. That's the standard for the gatekeeping. That means everybody's going to qualify. Not necessarily. For instance, you could come into court and file in this court, I guess initially, claim that you're entitled to relief because of the Armed Career Criminal Act and residual clause being declared void. This court, in looking at the record, might think, well, perhaps this thing should go back. But when it gets back to the district court, they take a look at it. Yeah, the individual was sentenced under the Armed Career Criminal Act, but he had three drug offense predicates and two burglaries. Well, that individual's out of court. That person doesn't satisfy the gatekeeping requirement. Or it could be a situation in which there was an 851 notice filed, and the person's subject to a mandatory life sentence or some sort of enhanced mandatory that's beyond the 15 years. The 15-year sentence under the Armed Career Criminal Act is imposed concurrently. That individual, again, doesn't get past the gate. But everybody else. Well, you and your adversary seem to, I mean, you're both, and understandably so, have a fairly stark position of either the government says if it's questionable, you're out. You're saying if it's questionable, we're in. It's that middle area that I think we'd like to explore a little bit. You know, sort of the more nuanced opinions maybe of like the eighth, sorry. Yeah, the circuits, the ninth especially, yeah. Well, here's our problem with the government's version. So the gatekeeping standard becomes, as Judge Jordan pointed out last time, I was in front of you, basically a dressed-up merits analysis. And so you come into court. Now, the government's position is individuals like Mr. Mayo and Mr. Peppers, they've got to basically prove their case at the gatekeeping or initial jurisdictional threshold and based upon the law as it existed at the time that they were sentenced. Now, the problem with that standard is almost every single one of these cases has a silent record. There's rare in the extreme that a court said, oh, I'm using a residual clause to impose this particular sentence as opposed to simply doing it. So what's wrong with then looking at the state of the law at the time that the sentencing occurred? I mean, that would be, it seems to me, a somewhat logical reference point. Well, it's somewhat logical except for if you think about it in these terms. So the law has developed quite a bit since even this court's most recent pronouncements in this area as a result of Mathis. But one thing that would happen is, so you'd have a couple of guys that were sentenced, let's say, in 1995. Now, those guys would get the benefit of, say, Taylor, but not of Shepard. Then you've got another group of people that would get the benefit of Shepard, but not of the Johnson 2010 decision. Then you get another group that gets the benefit of Johnson 2010, but not to Camps or not Mathis. So you've got all this line drawing taking place at the district court level in an area that, as this court knows, is exceedingly complicated to begin with. Is it something we have to wrestle with in this case, or does the fact that this is an 11C plea mean that the sentence wasn't based on the residual clause, it wasn't based on ACCA, it was based on the fact that your client, for reasons good and sufficient to himself, decided to bind himself to a specific term with the government? Well, I could skip to that argument as well. So the 11C1C plagrim obviously impacts Mr. Peppers' case. Right. But I don't think it impacts it to the extent that it forecloses relief, and here's why. So as this court recognized in Witherspoon and as the Supreme Court recognized in Freeman, you've got these 11C1C plea agreement cases. In the guideline context, it's an analogy, we get a retroactive guideline amendment. Right. Some of those guys get the benefit of it, of relief, because they're pleading based on the guidelines. So why should this not – why should the fact that this is an ACCA case be treated differently than the guidelines case, where the Supreme Court said, you know, through – well, let me just back up and say, do you agree that Justice Sotomayor's opinion is the thing that dictates how we're obligated to view Freeman, that it's the narrowest holding? I believe that that's correct, and that's what this court said in Witherspoon, and that seems to be what most of the circuits have said, in that we would use that as an analogous example of how to treat this particular fact paradigm. Okay. If we did use that as analogous, if we did use that as analogous, what does that mean for your case? How do you fit? Well, I would simply say this. Mr. Peppers came into court. He wasn't charged with a whole bunch of offenses. So we don't have an overlay of a drug charge or anything else. We simply have a straight-up felon in possession, 922G case. If you look at his plea agreement, it says, oh, by the way, you're subject to Section 924E, and oh, by the way, you're an armed career criminal. You're agreeing that, you know, you had a .22 caliber revolver as an armed career criminal. And that sentence, that 15-year sentence, that didn't come out of the blue. That's a mandatory minimum. So which of the two exceptions that Justice Sotomayor listed are you saying that fits under? I would say it fits under the exception that says this particular sentence was based upon the Armed Career Criminal Act. Isn't it always the case when you plead guilty that you assume the risk that a later rule is going to be more beneficial to your case? I don't know if I would characterize it as assuming the risk, but certainly when you plead guilty you're accepting a degree of factual guilt and you're foregoing perhaps a later challenge to the underlying conviction. In this particular case, it's a sentencing. I mean, all of these individuals, frankly, pled guilty for the most part. I shouldn't say all. I'd say the vast majority. Did you discuss the practical effect of resentencing Peppers? It looks like he is doomed any which way he approaches resentencing. Well, he's certainly running a risk, as many people would, in connection with 11C1C2. That is what you're asking for, for him to be resentenced, despite the fact that he has quite a large number of qualifying convictions. I'm not sure he does have quite a large number of qualifying convictions. The burglaries, I think, in light of this Court's decision in Spiner, are out. One of the convictions is a juvenile conviction. He may run the risk that the government decides to seek the charges that they could have sought back when he took the plea agreement. Right, because it's in the plea agreement that they can reinstitute, right? They can go after him for murder one if they want. That's true. I don't think, by the way, this plea agreement was offered because of the government's generosity or because they felt sorry for Mr. Peppers. I think there was a significant proof problem in proceeding with those charges, but be that as it may. Which has probably gotten worse over time, right? I don't think it's changed over time, but certainly hasn't gotten better. How many years has it been? Well, 2004 is a number. So we're 13, 14 years, and since the incident, longer, right? Yes. The incident of conviction. So if they wanted to prosecute him for first degree murder, they'd have a tough time in large part because of the passage of time, which prompts me to ask, is it the case that we should be paying attention to the Freeman idea that there's a deal struck and courts should not be rewriting deals after the fact? Well, I think that would be the case if, say, this case was prosecuted with a number of charges and there was some sort of agreement based upon guideline calculations and other things. But that's not what happened here. The sentence was simply based upon the Armed Career Criminal Act. He's really in not a whole lot of a different position than most of the other guys that got a 15-year sentence based upon the Armed Career Criminal Act, simply because it's in the form of an 11C1C agreement. That's simply, in this particular case, limited. But that's a pretty – when you say simply, that's a pretty big deal. I mean, it's a big enough deal that the Supreme Court of the United States has said, in effect, see, please, are different. Well, they're different, and they can be different, but we don't think this one is. We think Mr. Peppers' case falls squarely within the exception because his sentence was based upon the Armed Career Criminal Act. It couldn't have been based upon anything else. The judge certainly didn't come up with 15 years on her own, and neither did the parties. That's what the Act dictated. Does it matter who's got the burden to come forward with Shepard documents? I think it can matter, but it's probably a lot more limited impact than the government suggests. I mean, in light of Mathis, the number of cases in which Shepard documents are going to be important is a fairly small group. So there's, in the Middle District of Pennsylvania, 20 Armed Career Criminal Act cases. And out of those, the vast majority can be resolved based upon the statute of conviction. So it's a fairly limited number, and I don't think it's really that big a deal to come up with them. Frankly, the probation office – If it's not that big a deal to come up with them, then the party that has the burden of proof, the defendant, ought to come up with them. Doesn't that stand to reason? Well, it can be. We're in a little bit of a different position than, obviously, the probation office, which does this all the time, or the government, which has a little bit greater access to records than we do, particularly if they're out of state. But my point really was not so much that it's so small a deal that anybody can do it, but simply that the government's position is this would be an onerous task, and I don't think it really is. In regard to Mayo, he has a different set of offenses that we look at. How are his offenses involved in the use of force? It seems to me that virtually all of his prior offenses are qualifying predicates because they involve the use of force. Mayo's in, obviously, a different position, and when we addressed Mayo in the district court, we were working off of this court's ruling in Blair. We believe there's a couple of reasons why Mayo's case should be treated differently. One is the district court simply went through and used the pre-sentence report to figure out what was a crime of violence, and that was a factual analysis, and it shouldn't have been able to do that. More important, the threshold legal issue is that they simply took the facts out of the pre-sentence report. Looking at the circumstances of the offense. Yes. Judges do that all the time. They do it all the time, but the Supreme Court has said in Mathis, which we're supposed to be looking at, is the elements, not the fact that an offense can be perpetrated in a particular way or by a particular means, and what the district court did here was simply identify those means and put them in the opinion and say, well, that obviously meets the force clause, and that's not the appropriate analysis. Well, if we focus on the elements, you seem to make a kind of push Castleman away, but how can there be serious bodily injury without force? Well, that's the analysis in Castleman, so our position would simply be this. Castleman's addressing a different thing. They made it pretty apparent in the opinion that the presumption of consistent usage doesn't apply. Why not? Yeah, when you say they made that clear, what kind of a world are we living in where you can say that serious bodily injury and force, those things ought not be considered consistently across criminal penalty statutes? That's a strange position. Why? Now, I'm not saying it's not the position the Supreme Court took. It may well be, but why should we go there? Why does that make sense? Well, it makes sense for a couple of reasons. As this case makes apparent, and as many of the other ones do, frequently a prosecutor in a state court level will include the facts in a charging document. Some will. Some won't. One way to make sure that there's consistent treatment is by focusing on the elements as opposed to the facts, just because a prosecutor included a factual recitation in one charging document. Yeah, but I'm asking you about the elements, because to get where you want to get, you've got to say what you said a minute ago, which is ignore Castleman. Even though Castleman seems to be saying you can have serious bodily injury with indirect force, not with some direct physical force. Why do we need to ignore Castleman? Well, because it's dealing with a different thing. What's the different thing? So if you're talking about a firearms prohibition, you're going to make the universe of cases that might be subject to the prohibition consistent with the congressional intent. But if you're talking about putting somebody in jail for 15 years of life and you're going to do it only in a situation where they're a pretty significant criminal to begin with, you're going to make the world of cases a little bit more narrow. You have examples where you can have serious bodily injury without the use of force? Well, like state court in Pennsylvania, yes. If you starve your children or lock somebody up and don't give them access to medical treatment when they might otherwise need it, we see them crop up occasionally. That's serious bodily injury in state court. That universe of cases as defined in Pennsylvania is a little bit broader than the universe of cases that Congress recognized in the use of force. And that's simply our position. I see my time has expired. Well, actually, that's okay. You're on our time now. It's okay. I had another question. Back to Gizos and some of the other ones, why should we consider decisions that post-date the sentencing date in order to determine whether something meets the elements clause or not? Well, I don't think we should preclude the courts from considering clarifications of existing law. Mathis isn't something we should. But the district court, the sentencing court didn't have the benefit of that, right? That's correct. We're trying to define what is in the district court's head, I think, right? And obviously those new cases are not. Well, the government concedes that the newer cases would be applicable on a merits analysis. So let's just take, for example, two individuals. Well, they concede that in Mayo where it looks like they're applying it, but did they concede that in Peppers? I mean, that's something I'm going to be asking your colleague about. Well, there's a footnote in there. I don't know if it's six or eight, but I believe it says that when you get to the merits analysis, you get to use the current law. Actually, isn't that what happened in Johnson? I believe so. You got the benefit of a post-sentencing rule? So here's why we would do it. So we have two defendants. They're both 1995. They're sentenced and convicted. One guy decides to file a 2255, and the other guy doesn't. Now, when Johnson comes down, they both seek relief. Now, the guy that's filed a 2255, he's now subject to this onerous gatekeeping burden where he's got to basically make out his case based on a law that existed in 1995, and he's probably not going to be able to do it. And there's nothing left for a merits analysis after that. The other guy, however, he gets to go straight to a merits analysis in a district court. Now, based upon the government's concession regarding the merits analysis. When you say guy, you mean Mayo and Peppers? Well, I'm just randomly picking two people out to make the point. But there doesn't seem to be a particularly good reason to treat this gatekeeping thing as some sort of extra burden of proof simply because a person filed a prior 2255. And all we're trying to do is narrow the range of cases where we could. But when you say it doesn't make sense to make it some extra burden thing, the Congress made it an extra burden thing. They specifically put in 2255-H and 2244 as limiting things to make sure that there was an extra burden before you filed a second or successive 2255 motion. That's, I mean, you just seem to be driving into the teeth of the statute itself there. They meant to make that a serious hurdle, didn't they? I don't think they meant to make it a serious hurdle. I think they meant to make it a hurdle that narrowed the range of cases where you consider a subsequent 2255. Yeah, they meant quite intentionally to say you get one shot at this, you get one free bite after that unless you can show you're relying on a new issue of constitutional law case made retroactive on appeal by a decision of the Supreme Court or new evidence, et cetera. So you don't even need to recite the whole 2255-H standard to you. But it's a high bar, and it's an intentionally high bar. So I may not understand where you're going with this argument, but, hey, it's somehow unfair to make sure that the gatekeeping associated with 2255-H is not too significant. It seems a strange position to take given the very clear statement by Congress that, yeah, it's a serious gate. Now, assume you get through the gate. You're telling us you think both sides believe you can rely on new case law then, that you think the government and you are on the same page here? Well, I'm just going by what they have in their brief, but I don't see why you wouldn't. I mean, these aren't new cases. They're simply clarifications of existing precedent. They made that pretty clear. But back to your point on the gatekeeping aspect, if we're going to load up the gatekeeping thing with all this proof that's necessary, then what's left for the merits analysis? I don't believe there would be anything. I'm not sure those two things are the same. You seem to equate their burden of proof analysis with 2255-H being a high bar. But it's possible that they're wrong and that 2255-H is indeed a high bar, but you clear it because of Johnson 2015, right? That's our position. That case gets you in the door. We've identified a particular rule that's been made retroactive. It appears to apply to this gentleman who's been sentenced under the Armed Career Criminal Act, and he still has to meet his burden of proof. We're not relieving him of it. He simply gets to do it circumstantially by proving that he didn't fit within any of the other categories. Okay, thank you, counsel. We'll hear you on rebuttal. May it please the Court. Carl Marchioli for the United States. I quickly want to address two points that were raised by Mr. Peppers in his reply brief, and I do want to get to the jurisdictional point first. But just on the 11C1C point, Mr. Peppers says that the government forfeited that argument in the district court because, according to him, we only mentioned it in a footnote in one of our briefs. That's inaccurate. We actually briefed the issue, and that's at document number 306. On the jurisdictional point, I want to clarify the government's position. Mr. Peppers, in his reply brief, and I think Mr. Allert made the same point during the white oral argument, but the government has been consistent about what the position is. It's not the government's position that a defendant loses just because a sentence in court did not specify whether it was using the residual clause. As Judge Chigar has suggested, a defendant can look at prior records, including his PSR and available prior conviction documents, to establish that based on the law as it existed at sentencing, a district court must have used the residual clause in sentencing him under ACCA. And Mr. Peppers' case is a great example of that. Before you keep rolling, I want to get one thing straight at the jump. Do you or do you not agree that assume we thought that they got past the gatekeeping and we were on the merits, do you agree that at that stage, post-sentencing case law, particularly of the character of Mathison to Camp and Johnson 2010, which are by the Supreme Court's statements, not new law, but clarifications or merely stating what the law has always been, is law that can be looked at? It depends on whether the defendant's motion is an initial or second or successive 2255 motion. The government's bottom line is that in either case, a defendant raising a Johnson claim needs to establish that the residual clause was actually used in his case. Right. Now, we're through the gate. We're through the gate. Once you're through the gate, we're on the merits. Maybe I'm just missing your point here, and I apologize if I'm being obtuse. Is it the government's position that post-sentencing case law can be seen in that, can be looked at in that category or not? Yes, and the reason for that is once a defendant has established that the residual clause is actually used at his sentencing, he's established that under Johnson 2015, his sentence was invalid. And then you can look at when you say, oh, so you are in fact saying that you view the gatekeeping jurisdictional question and the merits as the very same question. They're the same. In a second or successive motion, that is the case. And how could that be, counsel? How could it be the case that Congress intentionally set up a system in which the first step is entirely redundant or the second, depending on how you want to look at it, because they're really the same step? Aren't we supposed to look at these things and imagine that Congress is approaching it sensibly, and they don't create two steps if there's really only one step? Well, part of the merits analysis, even in a second or successive motion, even if a defendant can establish that the residual clause was used, is going to be whether he has any other qualifying predicate. So there is something in addition. That's an issue. That's a completely separate issue, right? That has nothing to do with whether this person was rightly sentenced based on the clauses or the convictions that were the battle between the parties. I apologize again. I'm not following that at all. The fact that there might be something else in the record which could justify the sentence tells you nothing, has nothing to do with the issues we're fighting about right now. We may get to the point where we say, hey, remand, because the defendant's right, but at the end, maybe this guy or these two people have other qualifying convictions. What does that have to do with the analysis we're in right now? In the analysis we're in right now, we're trying to figure out whether very specific prior convictions that you folks are fighting about do or do not constitute crimes of violence subject to the elements clause. So help me out. How can it be the case that Congress set up a system where step one and step two are the same step? Let me try to spell it out a different way. When a defendant asserts a Johnson 2015 claim, he is in effect asserting that his sentence was based on the residual clause. So in an initial 2255 motion, he still needs to establish that his sentence was based on the residual clause. He needs to establish it? I guess that's the real question, right? You've taken the position that the gatekeeping is the merits phase. What do you have in the way of law, what precedent do you have that says, Congress set up a gatekeeping and then a merits analysis, but they really meant prove your gatekeeping by proving your merits? What case are you relying on for that? I think Goldbloom is a good indication of that. Goldbloom says that? At 213, Goldbloom said that in addressing the gatekeeping requirements at the district court level, the district court is probably going to have to address or touch on the merits. There's going to be overlap there. There's going to be interplay. And that's because of the way that the gatekeeping requirements are structured. Well, sure, sure. That's true. And we said you've got to have at the district court level, you've got to have a more serious interaction with this than at the appellate level. I mean, we were pretty clear on that, I think. But the fact that you have to touch on some of the same issues that you're going to hit on the merits, that doesn't mean it's the same analysis and the same standard, does it? Well, again, the government's bottom line is that even if you don't have the gatekeeping requirements, even if it's an initial 2255, a defendant still needs to establish that the residual clause was used. And that's what the 11th Circuit decided in Beeman, and that's what the 10th Circuit decided in Snyder. Those were both initial 2255s. And then because of the way that 22H2 and 2244B2A are worded and structured, if a defendant cannot show that the residual clause was used at his sentencing, then he cannot show that he's actually relying on or depending on Johnson. And so, therefore, it needs to get booted at the gatekeeping stage. But in the end, even if the court doesn't agree with the government that it's not a gatekeeping question, the government would still argue that at the merits stage, and even if it was an initial 2255, that the defendant still needs to satisfy the same burden. And that's what Snyder and Beeman concluded. The same burden. And that burden is what? More likely than not? That's correct. And the 11th Circuit in Beeman's played that out. It's a question of historical fact whether a defendant was sentenced using the residual clause. And the reason you can't rely on other cases that postdate sentencing is because in the second or successive context, those cases don't meet the gatekeeping requirements. But you can rely on it at the merits stage. If you're past gatekeeping, you can rely on it. Again, it depends on whether it's an initial or second or successive 2255. I don't understand that. I'm having a tough time following that because I've just given you a hypothetical, which is imagine you're through the gatekeeping. Because at that point, if you're through the gatekeeping, there's no difference between an initial and a second or successive, right? Right. That's correct. Okay. So you're through the gatekeeping. Stay on my hypothetical. At that point, can you or can you not rely on post-sentencing case law to make out the claim that you were not convicted of a crime of violence? Yes, because at that point, the defendant has established that the residual clause was actually used in his case, and therefore his sentence is invalid unless the predicates qualify under another provision of ACCA or there are other predicates out there. And so at that point, you're essentially at a resentencing stage at that point, and the defendant would be able to make use of current law. But the reason the defendant cannot use post-sentencing cases to establish that the residual clause was actually used in his case is because, again, in second or successive, those cases wouldn't meet the gatekeeper requirements that others had established. And if they're cases like Mathis and DeCamp and Johnson 2010, by definition, by the Supreme Court statement, they're not new law. These are cases that the Supreme Court has gone out of its way to, in effect, say, this is what the law has always been. You guys out there may have been confused about it, but we're not saying anything new. This has always been the law. Why is it wrong for a defendant to say, I'm just relying on what the law always was. The Supreme Court just made it clear to all you folks who didn't understand. There are a few reasons for that. First, you're trying to answer a question of historical fact. What did the sentencing court do? And for burglary, for example, when you have a case like this court's decision in Bennett, which allowed for Pennsylvania burglary to be considered in certain circumstances, then, of course, when answering the question of historical fact, you look to Bennett and not a case decided in 2016 by the Supreme Court or not this court's decision in 2017. We're not applying the case law. We're trying to apply the statute, right? I mean, you assume that we are applying, we're just trying to figure out what case law says, but we're supposed to be applying ACCA. And the Armed Career Criminal Act, according to the Supreme Court of the United States, has always meant what it said it meant in Mathis, always. Always meant what it said it said in Johnson 2010. So why does the fact that the Supreme Court says that later mean it doesn't mean that earlier? Doesn't the law say, no, it did mean that earlier? Because you're trying to determine what the sentencing court actually did. And when there's on-point circuit precedent that indicates what the sentencing court likely did, that's the relevant question. That's what you should look at. And even in Jesus, which ultimately the Ninth Circuit ruled against the government in that case, the Ninth Circuit indicated that when you have an on-point circuit precedent that indicates that one of the predicates would have qualified under the enumerated offenses clause. Is it your position then that cases like Mathis and Johnson have only prospective applications? No. Mathis could apply on collateral review, but it's not a basis to assert a Mathis claim. You cannot assert a Mathis claim in a success of 2255 because Mathis does not meet the gatekeeping requirements of 2255H2. You would also have the problem on an initial 2255 of showing that a Mathis claim creates the ability to assert the claim more than a year after the conviction became final because the Supreme Court did not recognize a new right in Mathis. So under 2255F3, a defendant could not assert a Mathis claim more than one year after his conviction became final. But in Jesus, the Ninth Circuit said when you have on-point circuit precedent establishing that the enumerated offenses clause or elements clause could have been used at the time of sentencing, then you can conclude that the sentencing court actually relied on that circuit precedent and likely used or could have used at least the enumerated offenses clause or elements clause. If we were still arguing about the gatekeeping at this point, assume we got past that. For the sake of discussion, assume we thought you're just wrong and we're through the gate and we're now at the point where we can apply post-sentencing case law by your statement. Does that mean that Mr. Pepper's burglary conviction is not a qualifying predicate offense? If applying current law, the burglary conviction would not qualify. And if that were true, would we have to go further and look at any other things or is that enough to say it looks problematic? Send it back to the district court to see whether there's something else, whether you can gin up another set of three. Yes, assuming the court also rejected our 11C1C argument. I think because of the way this case was briefed, we briefed it as a jurisdictional question before Judge Rambo, and so there was no analysis about whether Mr. Pepper's had any other qualifying arguments. Well, that's a question I have, actually. Your plea agreement, what order do we need to go in in terms of analysis? Do we need to look at the plea agreement argument first or do we go to the jurisdictional, quote, unquote, jurisdictional argument? I think the right way to look at it is to address the jurisdictional argument first because it's the government's position that that's a jurisdictional question. Now, as my colloquy with Judge Jordan might suggest, the government believes, consistent with what the 11th Circuit decided in Beeman and the 10th Circuit decided in Snyder, that even if you think it's not a jurisdictional question, the defendant still has a burden to show that the residual clause was used, so it could end up being a merits question. That's kind of the government's alternative argument, and that's what Judge Rambo ultimately decided in this case. She said, government, I don't agree with your jurisdictional argument, but at bottom I think you're right that the defendant has to establish that the residual clause was actually used in this case, and so applying this court's decisions from the 1990s in Bennett and Cornish, Judge Rambo said that the robbery convictions qualified under the elements clause. Yeah, but by your own admission, at that point, she's making a mistake, right? Because if you're through the gatekeeping, she shouldn't be looking at Bennett and Cornish. She should be looking at Johnson 2010, right? Regardless of whether it's a gatekeeping inquiry, the government's bottom line is that a defendant has to establish that the residual clause was used. We think that based on the wording of 2255H2 in this court's decisions in Goldblum and Pendleton, when you're talking about a second or successive motion, that inquiry occurs at the gatekeeping stage. Yeah, and I feel like we're running in a circle here. If we assume we are through the gate, the district court should have been looking at post-sentencing case law, not just pre-sentencing case law. Is that right? Because if that's right, and I thought we had established that, then Bennett and Cornish aren't the things for her to be focused on. Judge Rambo's attention could rightfully also have been and perhaps exclusively should have been occupied with cases like Johnson 2010, right? The government's overarching argument is that a defendant has a burden to establish that the residual clause was used at his sentencing. Judge Rambo seemed to agree with that argument. She disagreed, though, with the government's position that that should be addressed at the gatekeeping inquiry for a second or successive motion. Ken, can you? I don't know whether you can answer the question I've posed to you or not, so let me try one more time. If we're through the gate, we're through the gate, post-sentencing case law is fully applicable. And I think you've said that, right? As long as the gatekeeping inquiry included asking whether the defendant established that the residual clause was used. Stop going back to the gate. Stop taking me back there. We're through that. Well, it really depends on what the gate is requiring the defendant to show. Right, and I'm asking you to assume he's gotten through it. That's what I'm asking you to assume. Now, please do that and tell me whether or not if we're through the gate, post-sentencing case law applies. Yes. All right. If that's the case, then assume Judge Rambo took you through the gate. You're through the gate, and you don't get to go back. If we're through the gate, assume we believe that's the case. Should she or should she not have been looking at Johnson 2010? She should have been, except in that case, the government would say that Judge Rambo got it wrong because she should have treated whether the defendant. At the gatekeeping. Right. Yes. Exactly. I'm clear on that. You have made that abundantly clear that that's your position. I'm with you on that. And just to spell this out a little bit more, what I'm trying to say is what the 11th Circuit did in Dieman and the 10th Circuit did in Snyder was correct. The gate was not even an issue in those cases. But nonetheless, those courts required the defendant to show that the residual clause was actually used in his case, and the courts decided that those defendants could not, for the same reasons that Mr. Peppers and Mr. Mayo cannot establish that. I know my time is up, but I'm happy to answer more. I'm about to ask you one. What about in Mayo? What should we do there? How did she err? So in Mayo, she definitely went straight to the merits and was looking at whether under current law his predicate convictions qualified. So she went through the gate, didn't look back. She did not address the government's jurisdictional argument at all, and she did not address whether Mr. Mayo could establish. Well, she did say there was jurisdiction, but. Okay, correct, correct. But she did not address whether Mr. Mayo could establish that the residual clause was actually used in his case. And Mr. Mayo could not establish that because at the time he was sentenced, his robbery convictions would have qualified under the elements clause, as would his aggravated assault conviction. Now, if the court disagrees with the government on the fact that a defendant has to show that the residual clause was actually used in his case, and just briefly, Judge Fuentes, I think you're right, if Mr. Allark is correct, any defendant sentenced under ACCA for the most part is going to be able to present his claim because the residual clause was a catch-all provision. It was at issue in all of these cases where there was a potential violent felony. But if the court disagrees with the government on that, then the government does agree with what Judge Rambo did at the merits. And I think that conclusion is required by what this court said in Chapman two months ago. In Chapman, the court applied Castleman to the elements clause in the guidelines context there, but the same analysis applies under ACCA. And the conclusion that the court reached in Chapman was that any time you have the causation of bodily injury, you have the use of force. And so that, I think, foreshadows. Any time? What are we to make of the language of the Supreme Court in Castleman, which is, in effect, we're not talking about other stuff. We're just talking about this misdemeanor domestic violence case in the context of this 922 G9 or whatever the subsection is like. That's what we're talking about, and we're not talking about anything else. I mean, they don't usually go out of their way to say, and we're not talking about anything else. But they said it here. Isn't that significant? I think it is, and I think this court considered that in Chapman and concluded that when you're talking about the elements clause under the guidelines, and then the same thing would apply under ACCA, that the court's analysis in Castleman applies fully. And that's what the court ultimately decided in Chapman. And so I think that resolves the bodily injury point. Mr. Allark, also what do we do with the Thomas case? Out of Pennsylvania? Yeah. We have a case from, and it's not the Supreme Court, but it's the only kind of case we've got to work with where they are perfectly clear in saying, under our statute, you don't need force. If we have the courts of the state telling us our statute does not have an element of force, how can we say, oh, yes, it does? Because this court's inquiry is what federal law requires under the elements clause. Our inquiry has to be what were you convicted of, right, under state law. But the Supreme Court essentially rejected the same argument in Johnson 2010. I think there was a Florida state court decision that essentially said the same thing for the crime at issue there, that force was not an element of the offense. But the Supreme Court made very clear that you need to look at what force means under federal law. Now, the Thomas decision. Wait, wait, wait. You're telling me that the U.S. Supreme Court in Johnson 2010 was telling Florida that it doesn't know what its own statute said? No. They were saying, we'll define what force is under ACCA. They didn't purport to say, and we'll tell you what you meant in your statute. They just said, we'll define force for purposes of ACCA. That's correct. Good enough. And in this case, we say federal law governs what force is under ACCA, but we don't presume to tell the state of Pennsylvania what its aggravated assault, whether it includes under its statute force or not, if the state's courts tell us it doesn't include force. Isn't that right? Right, but that was as a matter of Pennsylvania law. So under Pennsylvania law, force could mean something different from what it means under ACCA, and that's the point that the Supreme Court made in Johnson 2010. Did I understand you with regard to purpose to say that the burglary conviction, which was a predicate offense, did or did not involve the use of force? The burglary conviction did not necessarily involve the use of force. It was a burglary into a residence, wasn't it? It was burglary into a residence, but that crime would have qualified under the enumerated offenses clause as generic burglary because it was burglary into a residence. Any burglary is a qualifier. Not necessarily. If it's burglary into a vehicle or another non-structure, it wouldn't qualify. It has to be burglary into a residence. Into a residence. And as Judge Rambo concluded, Mr. Pepper's burglary was into a residence. But with respect to the Thomas decision, it is relevant to look at Thomas to see what exactly aggravated assault requires under Pennsylvania law, and in Thomas, which I think Mr. Ehrlich does cite and other defendants have made the same argument, what the defendant did in that case by starving her 4-year-old child would amount to force under federal law because she took volitional acts. They weren't accidental. Volitional acts to actually put that child in a room, hide the child from a public site, and starve the child. So those are volitional acts, and those qualify as force under ACCA. Well, it sounds like endangering the welfare of a child. You say that that offense, if it's like that, involves the use of force? It could have been charged, I think, as endangering the welfare of a child, but it was charged as aggravated assault, which I think requires some additional elements under Pennsylvania law. And those elements do qualify under the force clause under ACCA because endangering the welfare of a child wouldn't necessarily require the use of force, but aggravated assault does. What do we do with the explicit statement in Thomas that the Pennsylvania aggravated assault statute does not require the use of force? You treat that as a question of Pennsylvania law. The court was answering what force means under Pennsylvania law. Precisely. And the question we have to answer is whether the least culpable conduct under the Pennsylvania statute would meet the definition of the elements clause under ACCA, right? Right. Okay. So if the least culpable conduct, according to the state of Pennsylvania's own courts, is no force, how could we say that that meets the definition of the elements clause under the ACA? Because if you look at Thomas, which the defendant has put forward as the least culpable conduct that could qualify. No, no, no. Not the facts. Not the facts of Thomas. The legal statement in Thomas, which is force is not required. I don't know how to state it another way except to say that the Supreme Court did address this in Johnson 2010. A state court is looking at state law. The federal court needs to look at the federal definition. I have you. Thank you, Your Honor. Thank you, Counsel. Thank you, Your Honors. Thanks. Just briefly and to follow up on a question that Judge Fuentes asked, in both of these cases they're not particularly ideal vehicles for deciding the substantive part of these predicates, which is the divisibility of these statutes. And it's in large part because some of the briefing was done based upon Blair, and there's been a lot of water under the bridge in the wake of Mathis. And to the extent that the court views the divisibility and scope of the aggravated assault and robbery statutes as important as a threshold legal issue, we didn't adequately or at least less than perfectly brief the thing. So if the court were interested, we'd be willing to submit a subpoena. Particularly in Mayo. Yes. So if the court's interested, I think we could do this in a couple of days and confine simply to divisibility as opposed to any additional argument. Yeah, why don't we have the parties debrief that? I think that's a good idea. Let's go with how about something under seven pages within a week of today. Thank you. If that's okay. Thank you. Anything more? You have another minute. I thought I used all my time up. But just to avoid any additional questions, I'm going to sit down. Okay. All right. All right. Thank you, counsel. Again, thank you for the excellent briefing and argument today.